IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION



**EOD**

10/31/2025

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **CHERIE FAYE ALEXANDER** | § | |
| xxx-xx-8536 | § | Case No. 24-41614 |
| | § | |
| Debtor | § | Chapter 7 |

| | | |
|---|---|---|
| BRIAN DAVID WOODWARD | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| v. | § | Adversary No. 24-4075 |
| | § | |
| CHERIE FAYE ALEXANDER | § | |
| | § | |
| Defendant | § | |

## MEMORANDUM OF DECISION REGARDING
## MOTIONS FOR SUMMARY JUDGMENT AND CLAIM OBJECTIONS

Cases at the corner of divorce and bankruptcy are often difficult and messy for all involved.[1] This case is no exception, and the procedural background and pleadings are complicated. Yet the dispute boils down to this: should a bankruptcy court review, as if on appeal, a final decision from a state court divorce proceeding? The answer is no.

This *Memorandum of Decision* addresses and resolves the following pending matters:

---

[1] Shakespeare alluded this when he wrote that "Marriage is a matter of more worth than to be dealt in by attorneyship." HENRY VI, Pt. 1 act 5, sc. 5.

1.   "Amended Motion for Summary Judgment and Brief in Support" filed by Defendant, Cherie Faye Alexander on February 4, 2025 at ECF No. 16 (the "Alexander MSJ");

2.   "Objection to Claim 3 of Brian Woodward in the amount of $384,730.62" filed by Defendant, Cherie Faye Alexander on May 13, 2025 in Case No. 24-41614 at ECF No. 145 (the "Alexander Claim Objection");[2]

3.   "Motion for Summary Judgment and Memorandum of Law In Support" filed by Plaintiff, Brian David Woodward on March 17, 2025 at ECF No. 21 (the "Woodward MSJ"); and

4.   "Objection to Claim 3 of Brian Woodward in the amount of $319,246.50" filed in Case No. 24-41614 by Nursery Decals & More, Inc. on April 2, 2025 in Case No. 24-41614 at ECF No. 126 (the "NDAM Claim Objection").[3]

Defendant, Cheri Alexander and Nursery Decals & More, Inc. ("NDAM") make similar arguments and share a common goal– to attack a state court divorce decree and related judgment.  Plaintiff, Brian Woodward is Mrs. Alexander's former spouse, and defends the divorce decree, related judgment, and his proof of claim by arguing this Court lacks jurisdiction due to the *Rooker-Feldman* doctrine, res judicata, and collateral estoppel.  All parties

---

[2] The Alexander Claim Objection was consolidated into this proceeding pursuant to the *Order Granting Brian Woodward's Motion To Consolidate Cherie Alexander's Objection to Brian Woodward's Proof of Claim (ECF No. 145) and Adversary No. 24-4075* entered July 25, 2025 at ECF No. 57.

[3] The NDAM Claim Objection was consolidated into this proceeding pursuant to the *Order Granting Brian Woodward's Motion to Consolidate Nursery Decals & More, Inc.'s Objection To Brian Woodward's Proof of Claim [ECF No. 126] and Adversary 24-4075* entered June 26, 2025 at ECF No. 38.

have responded to their opponents' pleadings.[4]

After consideration of the pleadings, proper summary judgment evidence submitted, and the relevant legal authorities, the Court agrees with Plaintiff. For the reasons explained in this memorandum, the Woodward MSJ is GRANTED, the Alexander MSJ is DENIED in part and DISMISSED in part, the Alexander Claim Objection is DISMISSED, and the NDAM Claim Objection is DISMISSED.

## I. Facts and Procedure[5]

Mr. Woodward and Mrs. Alexander were married on May 26, 2017. Two days before their marriage, both signed a premarital agreement (the

---

[4] Due to consolidation of the NDAM Claim Objection into this proceeding, and to permit NDAM a fair and reasonable opportunity to fully participate, the Court conducted a status conference on July 28, 2025 after which it entered a *Supplement To Scheduling Order Extending and Setting Specific Deadlines*. *See* ECF No. 59.

[5] The Court's *Memorandum of Decision* relies on Local District Court Rule CV-56. This rule directs a movant to include a Statement of Undisputed Material Facts and to support such a statement with "appropriate citations to proper summary judgment evidence." It directs a respondent to ensure that any response "should be supported by appropriate citations to proper summary judgment evidence." With regard to the disposition of the motion, the rule states:

> (c) **Ruling**. In resolving the motion for summary judgment, the court will assume that the facts as claimed and supported by admissible evidence by the moving party are admitted to exist without controversy, except to the extent that such facts are controverted in the response filed in opposition to the motion, as supported by proper summary judgment evidence. The court will not scour the record in an attempt to unearth an undesignated genuine issue of material fact.

Thus, any failure by a respondent to controvert the material facts set forth in any of the motions or to support such a challenge by references to proper summary judgment evidence, results in the facts as claimed and supported by admissible evidence by the movant "admitted to exist without controversy." E.D. TEX. LOCAL R. CV–56(c).

"PMA").[6]  The PMA provided that if divorced their community property would

be divided equally between them.  Mrs. Alexander was the only owner of

NDAM.  The PMA contemplated that Mrs. Alexander's ownership interest in

NDAM would remain her separate property.  The PMA also contained

paragraph 4.4, written by Mrs. Alexander, which treated income from NDAM

as community property.[7]  She disputes the meaning of paragraph 4.4.

Mrs. Alexander filed for divorce on January 13, 2021.  Their divorce

was filed in the 468th Judicial District Court of Collin County, Texas and

styled *In the Matter of the Marriage of Cherie Faye Woodard v. Brian David

Woodard*, Cause No. 468-50207-2021.  Mr. Woodward filed a counter petition

for divorce.  NDAM was not a party to the divorce case.  Their divorce was

contested, and Mrs. Alexander represented herself *pro se* as she does in this

proceeding.

The divorce court conducted a bench trial and issued a written

---

[6] Woodward Mot., ECF No. 21, Ex. A.

[7] Paragraph 4.4 of the PMA states in its entirety:

4.4 Community Estate Arisen from Prior Assets.

Cherie Faye Alexander and Brian David Woodward understand and agree
that community estate will arise or be created during their marriage as it
applies to income generated from Nursery Decals and More, Inc, with the
exception of current inventory, funds reallocated into the business, and the
first one hundred and fifty thousand dollars ($150,000) located in the
business checking account.

*Id.* ¶ 4.4.

memorandum dated May 23, 2022.[8]  This memorandum found the PMA "valid and enforceable."[9]  It permitted Mr. Woodward "to take all legal actions necessary to secure his portion of the community estate, including, but not limited to a lien against the separate property business building for the community portion of the funds used to pay for the building during the course of the marriage."[10]  This memorandum also denied Mrs. Alexander's tort claims, and denied all requests for attorney fees.[11]  Mrs. Alexander was ordered to pay Mr. Woodward $344,657.83, of which $201,066.50 was for "his community portion of the business."[12]

Later the divorce court entered its "Final Decree of Divorce" on October 19, 2022.[13]  The decree incorporated the May 23, 2022 memorandum, and again found the PMA "valid and enforceable."[14]  It also found the PMA was not made "under duress, constraint, or compulsion" and that it "is

---

[8] Alexander Obj., ECF No. 29, Ex. A-5;  Woodward Mot., ECF No. 21, Ex. C.

[9] Alexander Obj, ECF No. 29, Ex. A-5 at 23.

[10] *Id.*

[11] *Id.*

[12] *Id.* at 24.

[13] Alexander Obj., ECF No. 29, Ex. A-5; *see also In re Woodward*, No. 468-50207-2021, 2022 Tex. Dist. LEXIS 10795 (468th Dist. Ct., Collin County, Tex. Oct. 19, 2022).

[14] Ex.  A-5, at 2.

unambiguous."[15]

The divorce decree awarded Mrs. Alexander certain separate property.
This included real property located at "480 McKinney Parkway, McKinney,
TX 75071, owned by Nursery Decals and More, Inc."[16]  It also included:[17]

> W-9. The following real property, including but not limited to any escrow
> funds, rental income, furniture, fixtures, personal property contained on or in the
> residence, prepaid insurance, utility deposits, keys, house plans, home security
> access and code, garage door opener, warranties and service contracts, and title and
> closing documents:
>
>> Being a tract or parcel of land situated in the City of McKinney,
>> Collin County, Texas, being part of the Mary Standifer Survey,
>> Abstract Number 811, being part of Block 57 of Short's
>> Addition, an unrecorded Addition to the City of McKinney,
>> containing 0.325 acres of land, more or less, and also known as
>> 1005 S. McDonald Street, McKinney, Texas 75069
>
> owned by Nursery Decals and More, Inc. The Court finds that community
> funds in the amount of $153,822.07 were utilized, in part, to pay for this real
> property during the marriage. IT IS THEREFORE ORDERED that BRIAN
> DAVID WOODWARD may take a lien against this real property if necessary to
> secure his portion of the community estate pursuant to the community property
> settlement as described below in Section 9.

Mrs. Alexander was awarded the following bank accounts:[18]

---

[15] *Id.* at 3.

[16] *Id.* at 4.

[17] *Id.* at 6.

[18] *Id.* at 5.

W-6. The funds on deposit, together with accrued but unpaid interest, in the following banks, savings institutions, or other financial institutions:

  a.   $150,000 from the Chase Bank Business Checking Account, Account number ending 0380, owned by Nursery Decals and More, Inc. (already accounted for by the Court as the amount was deducted from the community property interest pursuant to the Premarital Agreement);

  b.   Subject to the community property settlement described below in Section 8.b., 8.c., and 9, Chase Bank Business Checking Account, Account number ending 0380, owned by Nursery Decals and More, Inc.;

The divorce decree also awarded Mr. Woodward certain property. This included:[19]

H-10. As BRIAN DAVID WOODWARD's community portion of the Nursery Decals business pursuant to the Premarital Agreement, BRIAN DAVID WOODWARD is awarded $201,066.50 to be paid to him by CHERIE FAYE WOODWARD.

H-11. Contractual spousal maintenance in the amount of $32,911.00 is awarded to BRIAN DAVID WOODWARD to be paid to him by CHERIE FAYE WOODWARD pursuant to the terms of the Premarital Agreement.

Among the debts awarded to Mrs. Alexander were the following:[20]

---

[19] *Id.* at 9.

[20] *Id.* at 10.

**W-6. CHERIE FAYE WOODWARD** shall pay $118,180.00 to **BRIAN DAVID WOODWARD** as part of his remaining community portion of the Folio Account previously liquidated by the parties.

**W-7. CHERIE FAYE WOODWARD** shall pay $201,066.50 to **BRIAN DAVID WOODWARD** as **BRIAN DAVID WOODWARD**'s community portion of the Nursery Decals business pursuant to the Premarital Agreement.

**W-8. CHERIE FAYE WOODWARD** shall pay $32,911.00 to **BRIAN DAVID WOODWARD** as spousal maintenance to be paid to him pursuant to the terms of the Premarital Agreement.

These debts total $352,157.50.[21] After accounting for a smaller amount owed Mrs. Alexander by Mr. Woodward, the divorce court further wrote that "CHERIE FAYE WOODWARD [Alexander] is ORDERED to pay BRIAN DAVID WOODWARD the amount of $344,657.50."[22] The divorce decree also awarded Mr. Woodward "judgment of $344,657.50 against CHERIE FAYE WOODWARD, with interest at 5% per year compounded annually from the date of the judgment, for which let execution issue" (the "Judgment").[23] This Judgment is the debt claimed in Mr. Woodward's Proof of Claim No. 3 and is the subject of both Alexander and NDAM Claim Objections.[24] This is also the

---

[21] *Id.* at 12.

[22] *Id.*

[23] *Id.*

[24] NDAM Am. Resp., ECF No. 67, Ex. C-1.

-8-

debt Mr. Woodward seeks to except from Mrs. Alexander's discharge pursuant to 11 U.S.C. §§ 523(a)(5) and (a)(15).

Mrs. Alexander appealed the divorce court's decision to the Court of Appeals, Fifth District of Texas at Dallas. *See Woodward v. Woodward*, No. 05-23-00051-CV, 2024 Tex. App. LEXIS 1733, 2024 WL 980357 (Tex. App.— Dallas Mar. 7, 2024, pet. denied) (mem. op.).[25]  On March 7, 2024, the appellate court affirmed the divorce decree. *Woodward*, 2024 Tex. App. Lexis 1733 at *34.  While on appeal, Mrs. Alexander did not supersede the Judgment. *Id*. at *4.  In her appeal, she contended that the divorce court:

> [A]bused its discretion by (1) interpreting the PMA to convert undistributed NDAM income into community property; (2) allowing testimony about the meaning of terms in the PMA and in crediting that testimony; (3) finding that Husband had authority to transfer money out of an NDAM account; (4) allowing Husband to place a lien on NDAM property; and (5) excluding tracing schedules she created.  She also contends the trial court erred in (6) its interpretation of indemnity provisions in the PMA; and (7) failing to find that Husband breached the PMA.

*Id*. at *4-5.  All of these appellate points were rejected.

Considering the first, third, and fourth of these contentions, the appellate court ruled as follows:

> Wife has not shown that the divorce decree divested NDAM of any property and has not shown that the decree is void. Therefore she had an adequate remedy on appeal for her arguments. We

---

[25] *See also* Woodward Mot., ECF No. 21, Ex. B.

> have concluded her related arguments in the appeal are without
> merit. Accordingly, we deny the petition for writ of mandamus as
> to Wife's contentions that the decree is void, and we overrule
> Wife's first, third, and fourth issues on appeal.

*Id*. at *18.  The appellate court overruled her second contention, writing:

> We conclude Wife has waived any complaint about the admission
> of Rice's testimony interpreting the PMA. Wife did not renew her
> objection to Rice's testimony at trial. Instead, she called him as a
> witness during her case in chief, before Husband presented his
> case.

*Id*. at *23-28.  The appellate court also said that "Even if we consider the

merits of Wife's argument, there was no abuse of discretion in allowing Rice's

testimony."  *Id*.  The appellate court overruled Mrs. Alexander's fifth

contention, writing:  "[w]e uphold the trial court's take-nothing judgment as

to Wife's indemnification claim. We overrule Wife's fifth issue."[26]  *Id*. at *32.

The appellate court found Mrs. Alexander waived her arguments concerning

the sixth contention, and so overruled her argument concerning indemnity.

*Id*. at *29.  Last, the appellate court overruled her seventh contention:

> Wife does not provide any citations to the record to show where
> we would find evidence to support her claims that Husband
> breached the PMA. Further, she cites no legal authority in this

---

[26] In its opinion it appears the appellate court referred at one point to the fifth
contention as the sixth, and the sixth as the fifth.  For purposes of this opinion, the Court
follows the numerical listing at the start of the appellate court's opinion.  *Woodward*, 2024
Tex. App. Lexis 1733 at *4-5.  Thus, the "fifth" contention, referred to as sixth in the body
of the appellate court opinion, concerns the tracing schedules disputed by Mrs. Alexander.
The "sixth" contention, referred to as fifth in the body of the appellate court opinion,
concerns Mrs. Alexander's indemnity arguments.

> portion of her brief. We conclude Wife has inadequately briefed this complaint and waived it by failing to cite the record and any authorities in support of her argument. *See* Mishkoff v. Garrett, No. 05-22-01063-CV, 2024 Tex. App. LEXIS 1403, 2024 WL 770142, at *7 (Tex. App.—Dallas Feb. 26, 2024, no pet. h.) (mem. op.). We overrule Wife's seventh issue.

*Id*. at *33. Accordingly, the appellate court affirmed the divorce decree as decided by the trial in its "Final Decree of Divorce" incorporating the May 23, 2022 memorandum.[27]

Mrs. Alexander sought review of the appellate court's decision before the Texas Supreme Court on June 18, 2024.[28] Without a published opinion, the Texas Supreme Court denied Mrs. Alexander's petition for review. *Woodward v. Woodward*, No. 24-0420, 2025 Tex. Lexis 88 (Tex. Jan. 31, 2025).[29]

On July 12, 2024, Mrs. Alexander filed a voluntary petition for Chapter 7 bankruptcy.[30] On her Schedule A/B, Mrs. Alexander did not list any claims against third parties, despite the divorce litigation.[31] She listed a disputed claim on Schedule E/F owed to Mr. Woodward in the amount of $352,157.50

---

[27] Alexander Obj., ECF No. 29, Ex. A-5; *see also In re Woodward*, 2022 Tex. Dist. LEXIS 10795.

[28] Woodward Mot., ECF No. 21, Ex. D.

[29] *See also* Woodward Mot., ECF No. 21, Ex. E.

[30] Case 24-41614, ECF No. 1.

[31] Case 24-41614, ECF No. 24 at 5.

and incurred October 19, 2022.[32]  Schedule I described her as the President of

NDAM.[33]  NDAM was not scheduled as one of Mrs. Alexander's creditors.[34]

As requested by the Chapter 7 Trustee, Linda S. Payne, the Court on

August 12, 2024 set a deadline of October 21, 2024 for filing non-

governmental proofs of claims.[35]  No proof of claim was filed by NDAM.

On September 24, 2024, Mrs. Alexander filed an adversary against Mr.

Woodward.[36]  In her adversary, Mrs. Alexander alleged causes of action

against Mr. Woodward for: (1) "Determination of Dischargeability When the

Judgment is Founded on No Real Debt or on a Legally Unenforceable

Obligation"; and (2) "Determination of Dischargeability under 11 U.S.C. §

523(a)(5) is not applicable if this court finds that title to cash above $150,000

in NDAM's bank account was not vested in the community estate."[37]

On October 6, 2024, Mr. Woodward filed this proceeding against Mrs.

Alexander seeking to except his Judgment from discharge under 11 U.S.C. §§

---

[32] *Id.* at 11.

[33] *Id.* at 15.

[34] *Id.* at 9-14.

[35] Case 24-41614, ECF No. 33.

[36] Case 24-41614, ECF No. 51; Case 24-4071, ECF No. 1.

[37] *Id.*

523(a)(5) and (a)(15).[38]  Because these two adversaries are part of the same

dispute, they were consolidated into this proceeding on April 22, 2025 after

some procedural detours.[39]  Mrs. Alexander and Mr. Woodward have both

filed summary judgment motions and responses.

On April 2, 2025, NDAM filed the NDAM Claim Objection in the

underlying bankruptcy case, which was later consolidated into this

proceeding on June 26, 2025.[40]  On May 13, 2025, Mrs. Alexander filed the

Alexander Claim Objection in the underlying bankruptcy case, which was

also consolidated into this proceeding on July 25, 2025.[41]  These claim

objections are part of the same dispute between the parties.

## II.  Summary Judgment Standard

A court may grant summary judgment "if the pleadings, depositions,

answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact

and that the moving party is entitled to a judgment as a matter of law."

*Celotex Corp. v. Catlett*, 477 U.S. 317, 322 (1986) (quoting FED. R. CIV. P.

---

[38] Case 24-41614, ECF No. 58; Case 24-4075, ECF No. 1.

[39] Order Consolidating Adversary Proceedings, Case 24-4075, ECF No. 31; Case 24-4071, ECF No. 32.

[40] Case 24-41614, ECF No. 126; Adv. No. 24-4075, ECF No. 38.

[41] Case 24-41614, ECF No. 145; Adv. No. 24-4075, ECF No. 57.

-13-

56(c)).  Thus, if summary judgment is appropriate, the Court may resolve the case as a matter of law.

The moving party always bears the initial responsibility of informing the court of the basis for its motion and producing evidence which it believes demonstrates the absence of a genuine issue of material fact.  *Celotex*, 477 U.S. at 323.  How the necessary summary judgment showing can be made depends upon which party will bear the burden of proof at trial.  *See Little v. Liquid Air Corp.*, 37 F.3d 1069, 1077 n.16 (5th Cir. 1994).  "A fact is material only if its resolution would affect the outcome of the action."  *Wiley v. State Farm Fire and Cas, Co.*, 585 F.3d 206, 210 (5th Cir. 2009); *see also Renwick v. PNK Lake Charles, LLC*, 901 F.3d 605, 611 (5th Cir. 2018).  "All reasonable inferences must be viewed in the light most favorable" to the nonmoving party, and "any doubt must resolved in favor of the nonmoving party."  *In re Louisiana Crawfish Producers*, 852 F.3d 456, 462 (5th Cir. 2017) (citing *Matsushita Elec. Indus. Co., Ltd. V. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).  An actual controversy of fact exists where both parties have submitted evidence of contradictory facts. *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 525 (5th Cir. 1999).

Courts may accept the moving party's version of the facts as undisputed.  *Alvarez v. United Parcel Serv. Co.*, 398 F. Supp. 2d 543, 548-49

-14-

(N.D. Tex. 2005) (overruled on other grounds); *cf. F.D.I.C. v. Foxwood Mgmt. Co., No.* 92-2434, 1994 WL 24911, at *6 (5th Cir. Jan. 14, 1994) (citing cases for the proposition that courts can accept the contents of a conclusory affidavit as true if they are unchallenged). This comports with the notion that courts need not hunt through the record searching for a genuine issue of material fact. *See Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998); *Savers Fed. Savs. & Loan Ass'n v. Reetz*, 888 F.2d 1497, 1501 (5th Cir. 1989). Once the movant has met its burden, the nonmovant may not rest upon allegations in the pleadings and still survive summary judgment. *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007). The Court does not, "*in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts.*" *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

## III.  Discussion

### A.  Jurisdiction Generally and Rooker-Feldman

Before any other matter, this Court must first determine whether it has jurisdiction. "Federal courts are courts of limited jurisdiction, and bankruptcy courts are no exception. Their jurisdiction is wholly 'grounded in and limited by statute.'" *Bass v. Denney (In re Bass)*, 171 F.3d 1016, 1022

(5th Cir. 1999) (quoting *Celotex Corp. v. Edwards*, 514 U.S. 300, 307 (1995)).

Without the existence of subject matter jurisdiction, the Court cannot

properly address the remaining requests of the parties.

Original and exclusive jurisdiction over bankruptcy "cases" under Title

11 is vested exclusively in district courts by 28 U.S.C. § 1334(a), while

jurisdiction over a debtor's property and property of the estate is vested

exclusively in the district court where a "case under title 11 is commenced" by

28 U.S.C. § 1334(e).  28 U.S.C. § 1334(b) provides that "district courts shall

have original but not exclusive jurisdiction of all civil proceedings *arising*

*under* title 11, or *arising in* or *related to* cases under title 11" (emphasis

added).[42]  It is usually unnecessary for a court to decide which precise

category applies to a particular matter, so long as it determines that it has, at

the least, "related to" jurisdiction under § 1334.  *Feld v. Zale Corp. (In re Zale*

*Corp.)*, 62 F.3d 746, 752 (5th Cir. 1995) ("For the purpose of determining

---

[42] "Title 11" refers to Title 11 of the United States Code, which is also known as the United States Bankruptcy Code, 11 U.S.C. §§ 101-1532.  A proceeding "arises under" Title 11 if the proceeding is created or determined by a statutory provision of Title 11.  A proceeding "arises in" a case under Title 11 if, by its very nature, it could arise only in the context of a bankruptcy case or, in other words, it is a proceeding which would have no practical existence outside of the bankruptcy context, such as a bankruptcy administrative matter.  Finally, a proceeding is "related to" a case under Title 11 if its outcome could conceivably effect the bankruptcy estate.  *Wood v. Wood (In re Wood)*, 825 F.2d 90, 93 (5th Cir. 1987); *Feld v. Zale Corp. (In re Zale Corp.)*, 62 F.3d 746, 752 (5th Cir. 1995).  These provisions work in conjunction with each other–moving from those matters with the strongest bankruptcy connection [those "arising under"]–to those matters which are only "related to" the bankruptcy proceeding.

whether a particular matter falls within bankruptcy jurisdiction, it is not
necessary to distinguish between proceedings 'arising under,' 'arising in a
case under,' or 'related to a case under,' title 11.  Instead, to ascertain
whether jurisdiction exists, it is necessary only to determine whether a
matter is at least 'related to' the bankruptcy."  (quoting *Walker v. Cadle Co.
(In re Walker)*, 51 F.3d 562, 568-69 (5th Cir. 1995)) (citation modified).

If a proceeding falls within one of these three categories, thereby giving
the district court subject matter jurisdiction, then the district court may refer
the matter to the bankruptcy court for that district under 28 U.S.C. § 157(a).[43]
*See generally Celotex Corp. v. Edwards*, 514 U.S. 300, 307-08 (1995).
Bankruptcy cases and proceedings in this district are routinely referred to the
bankruptcy judges for the Eastern District of Texas as contemplated by 28
U.S.C. § 157(a).  *See General Order 84-14, Order of Reference of Bankruptcy
Cases and Proceedings Nunc Pro Tunc*, U.S. District Court, Eastern District
of Texas, August 6, 1984.

The parameters of subject matter jurisdiction possessed by a
bankruptcy court, as a unit of the district court, under the "related to"
jurisdiction of § 1334(b) have been frequently addressed.  A matter is "related

---

[43] 28 U.S.C. § 157(a) provides that "Each district court may provide that any or all
cases under title 11 and any or all proceedings arising under title 11 or arising in or related
to a case under title 11 shall be referred to the bankruptcy judges for the district."

to" a bankruptcy case if "the outcome could conceivably have any effect on the estate being administered in bankruptcy." *In re Wood*, 825 F.2d 90, 93 (5th Cir. 1987).[44]   In later affirming and clarifying that standard in *In re Walker*, 51 F.3d 562 (5th Cir. 1995), the Fifth Circuit stated that an action is "related to" a bankruptcy case if "the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and . . . in any way impacts upon the handling and administration of the bankrupt estate." *FDIC v. Majestic Energy Corp. (In re Majestic Energy Corp.)*, 835 F.2d 87, 90 (5th Cir.1988)).

Although it is not limitless, "related-to" jurisdiction is broadly conferred to "avoid the inefficiencies of piecemeal adjudication and promote judicial economy by aiding in the efficient and expeditious resolution of all matters connected to the debtor's estate." *Miller v. Kemira, Inc. (In re Lemco Gypsum, Inc.)*, 910 F.2d 784, 787 (11th Cir. 1990).  This analysis was expressly endorsed by the United States Supreme Court in *Celotex*, in which the Supreme Court noted that "the 'related to' language of § 1334(b) must be read to give district courts [and thus bankruptcy courts under §157(a)] jurisdiction

---

[44] *See also Celotex*, 514 U.S. at 308 n. 6, 115 S.Ct. 1493 (noting that the First, Fourth, Fifth, Sixth, Eighth, Ninth, Tenth, and Eleventh Circuits have adopted this test, which originated in *Pacor, Inc. v. Higgins*, 743 F.2d 984 (3d Cir.1984)).  "The key word in the ... *Pacor* test is 'conceivable,' which makes the jurisdictional grant extremely broad." *In re Toledo*, 170 F.3d 1340, 1345 (11th Cir. 1999).

over more than simple proceedings involving the property of the debtor or the estate." *Celotex*, 514 U.S. at 308.

Even if jurisdiction exists, a bankruptcy court is permitted to "enter final judgment only if the court has both statutory and constitutional authority to do so." *Galaz v. Galaz (In re Galaz)*, 765 F.3d 426, 431 (5th Cir. 2014) (citing *Stern v. Marshall*, 564 U.S. 462, 481 (2011)). A bankruptcy court may enter final judgments in cases arising under Title 11, or in core proceedings arising under Title 11 or arising in a case under Title 11. 28 U.S.C. § 157(b)(1). Core proceedings include "matters concerning the administration of the estate," and the "allowance or disallowance of claims against the estate." 28 U.S.C. § 157(b)(2)(A), & (B); *see In re Serta Simmons Bedding, L.L.C.*, 125 F.4th 555, 572 (5th Cir. 2025); *see also* 1 Norton Bankr. L. & Prac. 3d § 4:31. Non-core proceedings are those only related to a bankruptcy case, and which do not arise under Title 11 nor arise in a case under Title 11. *WRT Creditors Liquidation Tr. v. C.I.B.C. Oppenheimer Corp.*, 75 F. Supp. 2d 596, 606 (S.D. Tex. 1999). A bankruptcy court may not enter final judgments in non-core related-to proceedings absent consent of the parties, but may hear such proceedings, subject to de novo review by the district court. 28 U.S.C. § 157(c)(1); *Exec. Bens. Ins. Agency v. Arkison*, 573 U.S. 25, 34 (2014).

An important limit on a bankruptcy court's exercise of jurisdiction is the *Rooker-Feldman* doctrine. "Under the *Rooker–Feldman* doctrine, 'federal district courts lack jurisdiction to entertain collateral attacks on state court judgments.'" *Weaver v. Tex. Capital Bank N.A.*, 660 F.3d 900, 904 (5th Cir. 2011) (quoting *Liedtke v. State Bar of Tex.*, 18 F.3d 315, 317 (5th Cir.1994)). *Rooker-Feldman* prohibits a lower federal court from functioning as a state appellate court and reviewing a state court decision if the issues raised in federal court are "inextricably intertwined" with the state court's decision. *Davis v. Bayless*, 70 F.3d 367, 375–76 (5th Cir. 1995) (citing *United States v. Shepherd*, 23 F.3d 923, 924 (5th Cir. 1994)); *In re Healey*, No. 15-60471, 2017 WL 4863014, at *4 (Bankr. E.D. Tex. Oct. 26, 2017). A claim before the lower federal court is "inextricably intertwined" with those addressed in the state court "whenever the relief requested in the federal action would effectively reverse the state court decision or void its ruling." *In re Healey*, 2017 WL 4863014 at *4 (citing *In re Popkin & Stern*, 259 B.R. 701, 706 (B.A.P. 8th Cir. 2001)); *see also Weaver,* 660 F.3d at 904; *Waggener v. Waggener*, No. 6:02-CV-517, 2003 U.S. Dist. LEXIS 8741, at *5 (E.D. Tex. 2003).

*Rooker-Feldman* applies "where the losing party in a state court action seeks 'what in substance would be appellate review of the state judgment.'" *Weaver,* 660 F.3d at 904 (quoting *Johnson v. De Grandy*, 512 U.S. 997,

-20-

1005–06 (1994)).  "Functionally, that is what the *Rooker–Feldman* doctrine is

designed to prevent—the losing party in state court filing a federal court

action to avoid the impact of a rendered (and, particularly, an unsuperseded)

state court judgment and seeking a rejection of that valid judgment through

federal court processes."  *In re Healey*, 2017 WL 4863014 at *4.  The *Rooker-*

*Feldman* doctrine applies even if a party does not explicitly state that a

review of a state court judgment is being sought.  *Id.*  However, it "does not

preclude federal jurisdiction over an 'independent claim,' even 'one that

denies a legal conclusion that a state court has reached.'"  *Weaver*, 660 F.3d at

904 (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280,

293 (2005)).  Absent the existence of an independent claim, this Court does

not have jurisdiction under *Rooker-Feldman* to consider unsuccessful

arguments made in the divorce proceeding if doing so means reaching a

conclusion contrary to the divorce court and lower appellate court's decisions.

It is true, as argued by Mr. Woodward, that Mrs. Alexander's

arguments may also implicate the doctrines of issue and claim preclusion.

*See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. at 293–94.

However, this Court cannot address issue and claim preclusion as to Mrs.

Alexander if the Court does not have jurisdiction over her claims because of

*Rooker-Feldman.*  The Court's inquiry under *Rooker-Feldman* asks not

whether a party's claim is barred, but whether the Court has jurisdiction to hear that claim in the first place.[45]

### B. Mrs. Alexander's Claims and *Rooker-Feldman*

The Court's *Rooker-Feldman* analysis reviews whether Mrs. Alexander is (1) a state-court loser; (2) alleging harm caused by a final state-court judgment; (3) that was rendered before the district court proceedings began; and (4) the federal suit requests review and reversal of the state-court judgment. *Raggio - 2204 Jesse Owens, L.L.C. v. Hattaway*, No. 20-50693, 2022 WL 3572694, at *2 (5th Cir. Aug. 19, 2022) (listing the four elements of a *Rooker-Feldman* analysis).

Two of these elements are easily found. Mrs. Alexander was a state court loser because the divorce court's decision and Judgment were entered against her in the divorce case. They were rendered before Mrs Alexander's

---

[45] The Seventh Circuit explained this difference between issue or claim preclusion, and *Rooker-Feldman* as follows:

> It [*Rooker-Feldman*] rests on the principle that district courts have only original jurisdiction; the full appellate jurisdiction over judgments of state courts in civil cases lies in the Supreme Court of the United States, and parties have only a short time to invoke that jurisdiction. The *Rooker-Feldman* doctrine asks: is the federal plaintiff seeking to set aside a state judgment, or does he present some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party? If the former, then the district court lacks jurisdiction; if the latter, then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion."

*GASH Associates v. Village of Rosemont, Ill.*, 995 F.2d 726, 728 (7th Cir. 1993).

bankruptcy case was filed.  She alleges that the Judgment harms her.  The remaining elements the parties dispute are whether the divorce court's decision is final, and whether the Alexander MSJ or Alexander Claim Objection ask this court to review and reverse the divorce court's decision in Mr Woodward's favor.

The divorce court divided the community property of Mr. Woodward and Mrs. Alexander.  It also found the PMA "valid and enforceable."[46]  The divorce decree granted Mr. Woodward the Judgment against Mrs. Alexander. She was ordered to pay Mr. Woodward $344,657.83, of which $201,066.50 was for "his community portion of the business."[47]  Her arguments and objections, of which there are many, boil down to a contention that the divorce court's decision was wrong and so Mr. Woodward's claim should be disallowed.

Mrs. Alexander's first appeal from divorce court was to the Court of Appeals, Fifth District of Texas at Dallas.  *Woodward v. Woodward*, No. 05-23-00051-CV, 2024 Tex. App. LEXIS 1733 (Tex. App.—Dallas Mar. 7, 2024, pet. denied) (mem. op.).[48]  During this first appeal, Mrs. Alexander did not supersede the Judgment.  *Id*. at *4.  As described extensively in the facts

---

[46] Alexander Obj, ECF No. 29, Ex. A-5 at 23.

[47] Alexander Obj, ECF No. 29, Ex. A-5 at 24.

[48] *See also* Woodward Mot., ECF No. 21, Ex. B.

section above, she raised seven points on appeal.[49]  These points correspond to
the arguments she repeats in the Alexander Claim Objection and Alexander
MSJ.  All were unsuccessful.  Mrs. Alexander asks this Court to disallow Mr.
Woodward's proof of claim because she believes the divorce court is wrong and
no debt should exist.  Such arguments fail because they ask this Court to
review and reverse the divorce court's decision.  Her only new arguments
concern dischargeability under §§ 523(a)(5) and 523(a)(15), which are
addressed below.[50]

Having lost at the intermediate appellate level, Mrs. Alexander sought
review at the Texas Supreme Court.  Her petition for review was denied.
*Woodward v. Woodward*, No. 24-0420, 2025 Tex. Lexis 88 * (Jan. 31, 2025).[51]
Does this denial mean the lower courtss decisions are final?  Denial of
discretionary review by the Texas Supreme Court does not indicate
agreement with the reasoning of the lower appellate court's decision, but
*does* indicate agreement with the decision itself due to the lack of reversible
error.  Tex. R. App. 56.1(b)(1).[52]

---

[49] *See supra*, 9-11.

[50] *See infra*, 28-31.

[51] *See also* Woodward Mot., ECF No. 21, Ex. E.

[52] Tex. R. App. 56.1(b)(1) states:

> (b) Petition Denied or Dismissed. When the petition has been on file in the

In Texas appellate practice, there is a difference between *refusal* and *denial* of a petition for review.  *Refusal* of a petition for review, or previously a writ, means that the Texas Supreme Court is satisfied both with the lower appellate court's decision *and* its reasoning.  *Myers v. Gulf Coast Minerals Mgmt. Corp.*, 361 S.W.2d 193, 196 (Tex. 1962) ("It is to be noted that by refusing the application for writ of error in each of these cases, this court adopted the opinion in each case as its own.").  In contrast, *denial* of a petition for review, or writ previously, means the Texas Supreme Court agrees with the lower appellate court's decision, but not necessarily with its reasoning or explanation of the law.  *Matthews Const. Co., Inc. v. Rosen*, 796 S.W.2d 692, 694 n.2 (Tex. 1990) ("In any event, our denial of the writ is no indication that this court approved the opinion of the court of appeals."); *see also* 6 McDonald & Carlson Tex. Civ. Prac. App. Prac. § 33:27 (2d ed.).  In Mrs. Alexander's case, her petition for review was denied.  This means the Texas Supreme Court may not have agreed with the lower appellate court's reasoning, but

---

Supreme Court for 30 days, the Court may deny or dismiss the petition--whether or not a response has been filed--with one of the following notations:

> (1) "Denied." If the Supreme Court is not satisfied that the opinion of the court of appeals has correctly declared the law in all respects, but determines that the petition presents no error that requires reversal or that is of such importance to the jurisprudence of the state as to require correction, the Court will deny the petition with the notation "Denied."

clearly agreed with the lower appellate court's decision to affirm the divorce court. The denial of her petition for review therefore means the decisions of the lower appellate court and divorce court stand and are final.

This conclusion is supported by Tex. Gov't Code Ann. § 22.007(e).[53] The language of § 22.007(e) does not provide that a lower appellate court's decision lacks finality if the Texas Supreme Court denies a petition for review. Nor does § 22.007(e) prevent the lower appellate court's decision from being precedential. Rather, § 22.007(e) means that the Texas Supreme Court's decision to deny a petition for review is itself not precedential. Deciding to deny appellate review is separate from the lower appellate court's ruling. In this case, the lower appellate court's decision was left undisturbed by denial of review. The Fifth Circuit recognized this finality when it wrote in a criminal case:

---

[53] Tex. Gov't Code Ann. § 22.007(e) states:

"The denial or dismissal of a petition for review has the effect of denying the admission of the case into the supreme court, except that a motion for rehearing may be made in the same manner that a motion for rehearing to the supreme court is made in a case in which the court granted review. The denial or dismissal of a petition for review may not be regarded as a precedent or authority."

(1) "Denied." If the Supreme Court is not satisfied that the opinion of the court of appeals has correctly declared the law in all respects, but determines that the petition presents no error that requires reversal or that is of such importance to the jurisprudence of the state as to require correction, the Court will deny the petition with the notation "Denied."

> It is significant that where a state intermediate appellate court renders a decision, and the highest state court thereafter simply denies discretionary review, then it is the judgment of the intermediate appellate court which is reviewed in the United States Supreme Court on certiorari, and the writ of certiorari runs to the intermediate appellate court.

*Goodwin v. Collins*, 910 F.2d 185, 187 (5th Cir. 1990).  This Court also recognizes the finality of the lower appellate court's decision, and declines, as did the Texas Supreme Court, to disturb that court's decision.

Because Mrs. Alexander seeks appellate review of her divorce decree and the debt she owes Mr. Woodward, under *Rooker-Feldman* this Court lacks jurisdiction to grant the relief she seeks.  The district court explains as follows:

> Unfortunately, this federal Court is not the proper forum for reviewing the application or interpretation of a state law by a state court. As Appellees appropriately point out, the *Rooker/Feldman* doctrine requires that, "[a]bsent specific law otherwise providing, [*Rooker/Feldman*] directs that federal district courts lack jurisdiction to entertain collateral attacks on state court judgments." *Liedtke v. State Bar of Texas*, 18 F.3d 315, 317 (5th Cir. 1994) (*citing Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S. Ct. 149, 68 L. Ed. 362 (1923) and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S. Ct. 1303, 75 L. Ed. 2d 206 (1983)); *see also In re Rabalais*, 496 F. App'x 498, 500 (5th Cir. 2012) (finding that "bankruptcy courts may not sit as appellate courts and revisit the merits of state court decisions," citing *Rooker* and *Feldman*). If a state trial court errs in an application of its own state law, its "judgment is not void, it is to be reviewed and corrected by the appropriate state appellate court." *Liedtke*, 18 F.3d at 317. "A state court judgment is 'attacked' when the losing party in a state court action seeks 'what in substance would be appellate review of the state

judgment.'" *In re Rabalais*, 496 F. App'x at 500 (quoting Johnson
v. De Grandy, 512 U.S. 997, 1005-06, 114 S. Ct. 2647, 129 L. Ed.
2d 775 (1994)). "Like the bankruptcy court, we lack the authority
to review the decision of the [state] court." *Id.* That is the precise
situation here.

*In re Hensley v. Hensley*, 551 B.R. 792, 803 (E.D. Tex. 2015). This Court
agrees with, and is bound by, this analysis in *Hensley*. Jurisdiction to
entertain Mrs. Alexander's arguments, other than regarding dischargeability,
cannot be exercised under *Rooker-Feldman*.

Accordingly, the Alexander Claim Objection is dismissed for want of
jurisdiction, and the Alexander MSJ is dismissed for want of jurisdiction,
except as it relates to dischargeability under §§ 523(a)(5) and 523(a)(15).

## C. Dischargeability under §§ 523(a)(5) and 523(a)(15)

Unlike reviewing the divorce court's decision, this Court does have
jurisdiction to decide Mr. Woodward and Mrs. Alexander's respective
dischargeability causes of action under §§ 523(a)(5) and 523(a)(15). Mr.
Woodward alleges that his Judgment obtained in the divorce case is excepted
from Mrs. Alexander's discharge. Mrs. Alexander responds that it is not and
recycles her arguments from state court.

This Court has jurisdiction over dischargeability causes of action
pursuant to 28 U.S.C. §§ 1334 and 157. Another Court recently found that
nondischargeability is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (I)

-28-

because "it falls under claims arising from the Bankruptcy Code because bankruptcy discharges are a form of relief established by federal bankruptcy law." *In re Harris*, 663 B.R. 457, 469 (Bankr. N.D. Miss. 2024). As such, this Court has authority to enter a final judgment on questions of dischargeability. *See Bikkina v. Mahadevan (In re Mahadevan)*, 668 B.R. 138, 148 (Bankr. S.D. Tex. 2025); *N. Tex. Cap.Partners, L.P. v. Dorvil (In re Dorvil)*, 665 B.R. 35, 47 (Bankr. N.D. Tex. 2024) (finding "constitutional authority to enter a final judgment because § 523 and § 727 are unequivocally bankruptcy causes of action"); *Happy Hollow Ranch, LP v. Howley (In re Howley)*, Nos. 23-31029-sgj7, 23-03068-sgj, 2024 Bankr. LEXIS 260, at *5 (Bankr. N.D. Tex. 2024) (same); *De La Rosa v. Kelly (In re Kelly)*, 582 B.R. 905, 908 (Bankr. S.D. Tex. 2018); *Nugent v. Ehrler-Nugent*, 484 B.R. 671, 677 (Bankr. S.D. Tex. 2012).

This Court recently considered the standards for dischargeability under §§ 523(a)(5) and 523(a)(15). *See Simmons v. Simmons (In re Simmons)*, Nos. 23-10130, 24-1006, 2025 LX 122849 (Bankr. E.D. Tex. 2025). In *Simmons* this Court wrote:

> 36. Section 523(a)(5) of the Bankruptcy Code exempts from discharge any "domestic support obligation" as that term is defined by section 101(14A).
>
> 37. Section 523(a)(15) of the Bankruptcy Code exempts from discharge an obligation ". . .to a spouse, former spouse, or child of

the debtor and not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record...."

38.  Section 523(a)(5)  works in tandem with section 523(a)(15). When an obligation cannot technically meet the definition of a domestic support obligation under section 101(14A), the Bankruptcy Code may still except that same obligation from discharge under section 523(a)(15). This dichotomy in Chapter 7 cases, renders it unnecessary for the Court to analyze whether a debt meets the statutory definition of a domestic support obligation if a party can demonstrate that debt would be nondischargeable under the less stringent evidentiary requirements of section 523(a)(15). *Tritt v. Tritt (In re Tritt)*, Nos. 12-42446, 12-4186, 2014 Bankr. LEXIS 1348, at *17 (Bankr. E.D. Tex. 2014); *see also Berse v. Langman (In re Langman)*, 465 B.R. 395, 405 (Bankr. D.N.J. 2012).

*Id.* at *15-17.  Because in this case, unlike in *Simmons*, Mr. Woodward has pleaded for relief under both §§ 523(a)(5) and 523(a)(15), the Court under the above precedent need only consider whether the debt owed by Mrs. Alexander to Mrs. Woodward is one meeting the requirements of § 523(a)(15).  "In order for a non-DSO debt to be excepted from discharge under §523(a)(15), the undisputed facts must demonstrate that: (1) the Debtor-Defendant owes a debt to a spouse, former spouse, or child which (2) was incurred in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record."  *Tritt v. Tritt (In re Tritt)*, Nos. 12-42446, 12-4186, 2014 Bankr. LEXIS 1348, at *18 (Bankr. E.D. Tex. 2014).

The debt owed by Mrs. Alexander to Mr. Woodward meets these requirements, and is therefore nondischargeable under § 523(a)(15).  The divorce court found that Mrs. Alexander owed Mr. Woodward a debt in the amount of $344,657.83 and ordered it paid by her to Mr. Woodward.  It is undisputed that Mr. Woodward is Mrs. Alexander's former spouse.  This debt was incurred in their divorce, Cause No. 468-50207-2021, *In the Matter of the Marriage of Cherie Faye Woodard v. Brian David Woodard*, before the 468th Judicial District Court of Collin County, Texas.  There is no genuine issue of material fact that the debt owed Mr. Woodward by Mrs. Alexander, as memorialized in the Judgment, is nondischargeable in her bankruptcy under § 523(a)(15).  The Court need not decide the same question as to § 523(a)(5) under the reasoning of *Simmons* and *Tritt*.

Accordingly, the Woodward MSJ will be granted.  For the same reasons above, the remainder of the Alexander MSJ is denied.

### D.  *Rooker-Feldman* and Standing as to NDAM

Unlike Mrs Alexander's claims, *Rooker-Feldman* is not dispositive of the NDAM Claim Objection.  The Supreme Court has described *Rooker-Feldman* as a "narrow" doctrine inapplicable where the party against whom the doctrine is invoked in federal court was not a party in the underlying state-court proceeding.  *Lance v. Dennis*, 546 U.S. 459, 464 (2006), citing

*Johnson v. De Grandy*, 512 U.S. 997, 1005-1006 (1994) (ruling that

*Rooker-Feldman* does not bar actions by a nonparty to the earlier state court

suit); *Raggio - 2204 Jesse Owens, L.L.C. v. Hattaway*, No. 20-50693, 2022 U.S.

App. LEXIS 23236, at *8 (5th Cir. 2022) (because "a nonparty cannot be a

state-court loser" *Rooker-Feldman* is inapplicable).  Unlike Mrs. Alexander,

NDAM was not a named party to the underlying divorce proceeding, meaning

*Rooker-Feldman* does not prevent this Court from exercising jurisdiction over

NDAM's claims.

Instead, the Court considers whether NDAM has standing to object to

Mr. Woodward's proof of claim.  NDAM was scheduled as an *asset* of Mrs.

Alexander's bankruptcy estate due to her ownership of NDAM.  As such, her

equity in NDAM is subject to control by the Chapter 7 Trustee.[54]  The Trustee

has neither abandoned nor sold the estate's interest in NDAM.  Instead, Mrs.

Alexander has exercised control over NDAM.

The doctrine of standing is jurisdictional and must be addressed at the

outset of a case.  *United States v. Hays*, 515 U.S. 737, 742 (1995); *see also*

*FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 230-31 (1990) ("standing is perhaps the

most important of the jurisdictional doctrines").  "Standing to sue is part of

the common understanding of what it takes to make a justiciable case." *Steel*

---

[54] See Case No. 24-41614, ECF No. 83.

*Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102 (1998) (citing *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990)).   "Standing is a species of subject matter jurisdiction, in that, if a party lacks standing, the court lacks subject matter jurisdiction to hear the matter, and it must be dismissed." *In re Rhinesmith*, 450 B.R. 630, 631 (Bankr. W.D. Tex. 2011).  Lack of standing cannot be waived, and must be considered by the Court.  *United States v. AVX Corp.*, 962 F.2d 108, 116 n. 7 (1st Cir. 1992).

The Fifth Circuit recently explained who does, and does not, have standing to object to proofs of claim in a Chapter 7 bankruptcy:

> In bankruptcy actions, only "parties in interest" have standing to object to proofs of claim. Yet, the Bankruptcy Code does not define who constitutes such a party. To fill this gap, we have recognized the general rules that "a trustee, as the representative of the bankruptcy estate, is [a] party in interest," and that "[o]ne who has filed a proof of claim is considered a party in interest." Therefore, "most courts have found that only the trustee may object to [creditors'] proofs of claim." And a debtor generally cannot object to claims.
>
> There are, however, exceptions to this rule. First, "an equity interest holder may be a party in interest if 'there exists a possibility that there will be a surplus after payment of claims.'" Second, a debtor may be a party in interest "if the sustained claim objection will pay more towards a non-discharged debt." And third, some bankruptcy courts have recognized that a debtor may have standing when no trustee has been appointed or the trustee "unjustifiably refused to object to a claim."

*Matter of Okorie*, No. 24-60255, 2024 WL 4471734, at *1–2 (5th Cir. Oct. 11, 2024).

-33-

NDAM was not scheduled as a creditor by Mrs. Alexander, nor did
NDAM file a proof of claim in the underlying bankruptcy.  NDAM is not the
Debtor.  NDAM is not the Trustee, though Mrs. Alexander's equity interest in
NDAM is property of the estate.  It is instructive that Trustee has not
objected herself to Mr. Woodward's proof of claim, nor has she joined or
expressed clear support for the NDAM Claim Objection.  To have standing
then, one of *Okorie's* exceptions must apply.  None do. NDAM cannot be an
equity interest holder in itself, is not the Debtor, and no party has alleged the
Trustee unjustifiably refused to object to Mr. Woodward's claim.  Therefore,
NDAM lacks standing to object to Mr. Woodward's claim.[55]  But even if
NDAM somehow has standing, its objection to Mr. Woodward's proof of claim
would be barred by *res judicata.*

*Res judicata*, or claim preclusion, operates to prevent relitigation of
claims that were or could have been raised in a prior action.  *In re Paige*, 610
F.3d 865, 870-71 (5th Cir. 2010), *quoting Allen v. McCurry*, 449 U.S. 90, 94
(1980).  Because Mr. Woodward's Judgment was rendered in Texas state
court, this Court considers Texas *res judicata* principles.  "Under Texas law,
res judicata 'requires proof of the following elements: (1) a prior final

---

[55] Despite the *Rooker-Feldman* conclusion above, Mrs. Alexander would likely not
have standing to object to Mr. Woodward's claim under the principles in *Okorie*, unless one
of the enumerated exceptions apply.  None clearly do under the evidence presented.

judgment on the merits by a court of competent jurisdiction; (2) identity of

parties or those in privity with them; and (3) a second action based on the

same claims as were raised or could have been raised in the first action.'" *In

re Healey*, No. 15-60471, 2017 Bankr. LEXIS 3719, at *11 n.16 (Bankr. E.D.

Tex. 2017), (quoting *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 652 (Tex.

1996)).  Mr. Woodward's Judgment is a prior final judgment on the merits.

The divorce court was a court of competent jurisdiction.  NDAM attacks Mr.

Woodward's Judgment on the same theories as did Mrs. Alexander in state

court.

Whether *res judicata* forecloses relitigation of the issues raised in the

NDAM Claim Objection depends on whether there is identity of parties or

privity.  Mr. Woodward and Mrs. Alexander were parties to the divorce case,

and NDAM was not. Mr. Woodward and Mrs. Alexander are parties in

bankruptcy, but so is NDAM.  There is not identity of parties, so does privity

exist between Mrs. Alexander and NDAM?  This Court recently wrote as

follows concerning privity and *res judicata*:

> With respect to the second element, "[t]here is no general
> definition of privity that can be automatically applied in all *res
> judicata* cases; the circumstances of each case must be examined."
> *Getty Oil Co. v. Insurance Co. of N. Am.*, 845 S.W.2d 794, 800
> (Tex. 1992). "An analysis to determine whether a person is in
> privity with a party to a prior judgment begins by examining the
> interests the parties shared." *Truck Ins. Exch. v. Mid-Continent
> Cas. Co.*, 320 S.W.3d 613, 618 (Tex. App.—Austin 2010, no pet.).

> Privity exists if "the parties share an identity of interests in the basic legal right that is the subject of litigation."
>
> Parties can be in privity in three ways: (1) they can control an action even if they are not parties to it; (2) their interest can be represented by a party to the action; or (3) they can be successors in interest, deriving their claims through a party to the prior action. *Mayes v. Stewart*, 11 S.W.3d 440, 449 (Tex. App.—Houston [14th Dist.] 2000, pet. denied), *disapproved of on other grounds by Agar Corp., Inc. v. Electro Circuits Int'l, LLC*, 580 S.W.3d 136 (Tex. 2019).

*Ruff v. Ruff (In re JMV Holdings LLC)*, Nos. 18-42552, 21-4003, 2022 Bankr. LEXIS 843, at *23-24 (Bankr. E.D. Tex. Mar. 31, 2022). Mrs. Alexander owns and controls NDAM. They share an identity of interest in the subject of this litigation, namely the validity, or not, of Mr. Woodward's claims. Though this Court has raised questions about the exercise of authority over NDAM by Mrs. Alexander, there is no question that she has controlled NDAM and shares with it a common goal adverse to Mr. Woodward.

The Court finds that privity exists between Mrs. Alexander and NDAM, and therefore that the elements of *res judicata* are met. Should NDAM be found to have standing to object to Mr. Woodward's claim, the arguments asserted in the NDAM Claim Objection would be barred by *res judicata*.

Accordingly, the Alexander Claim Objection is dismissed for want of jurisdiction.

## V.  Conclusion

Based upon the Court's consideration of the pleadings, the summary judgment evidence submitted therewith, the relevant legal authorities, and for the reasons set forth herein, the "Objection to Claim 3 of Brian Woodward in the amount of $384,730.62" filed by Defendant, Cherie Faye Alexander on May 13, 2025[56] is **DISMISSED** for lack of subject matter jurisdiction.

Based upon the Court's consideration of the pleadings, the summary judgment evidence submitted therewith, the relevant legal authorities, and for the reasons set forth herein, the "Motion for Summary Judgment and Memorandum of Law In Support"filed by Plaintiff, Brian David Woodward on March 17, 2025[57] is **GRANTED**.

Based upon the Court's consideration of the pleadings, the summary judgment evidence submitted therewith, the relevant legal authorities, and for the reasons set forth herein, the remainder of the "Amended Motion for Summary Judgment and Brief in Support" filed by Defendant, Cherie Faye Alexander on February 4, 2025[58] is **DISMISSED** in part for lack of subject matter jurisdiction, and **DENIED** in part as to dischargeability under §§ 523(a)(5) and 523(a)(15).

---

[56] Case No. 24-41614, ECF No. 145, the Alexander Claim Objection.

[57] ECF No. 21, the Woodward MSJ.

[58] ECF No. 16, the Alexander MSJ.

Based upon the Court's consideration of the pleadings, the summary judgment evidence submitted therewith, the relevant legal authorities, and for the reasons set forth herein, the "Objection to Claim 3 of Brian Woodward in the amount of $319,246.50" filed in Case No. 24-41614 by Nursery Decals & More, Inc. on April 2, 2025[59] is **DISMISSED** for lack of subject matter jurisdiction.

Appropriate orders consistent with this opinion shall be entered by the Court.

Signed on 10/31/2025

_____
THE HONORABLE JOSHUA P. SEARCY
UNITED STATES BANKRUPTCY JUDGE

---

[59] Case No. 24-41614, ECF No. 126, the NDAM Claim Objection.

-38-